**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| JEANNE BAKER, | } | |
| | } | |
| **Plaintiff,** | } | |
| v. | } | Case No.:  4:24-CV-00196-RDP |
| | } | |
| KOCH FOODS OF GADSDEN, LLC, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant Koch Foods of Gadsden, LLC's Rule 12(b)(6) Partial Motion to Dismiss. (Doc. # 6). The Motion (Doc. # 6) has been fully briefed. (Docs. # 6, 12, 13). For the reasons discussed below, the Motion (Doc. # 6) is **GRANTED.**

**I.      Factual Background[1]**

Plaintiff Jeanne Baker ("Plaintiff"), an African American female, began working for Defendant Koch Foods of Gadsden, LLC ("Defendant") on October 5, 2020 as a Parts Room Clerk in its Truck Shop and she remains in the position today. (Doc. # 1 at ¶¶ 2, 11, 16). In her role as a Parts Room Clerk, Plaintiff enters orders into Defendant's computer system and monitors inventory of the truck parts. (*Id.* at ¶ 2).

Defendant's Truck Shop is housed in a large metal building in which mechanics repair commercial vehicles. (*Id.*). At the time Plaintiff began working in the Truck Shop, there was not a women's restroom located in the building. (*Id.* at ¶ 3). Plaintiff was required to leave the Truck Stop building and walk outdoors to an adjacent building to use the restroom. (*Id.*).

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). Accordingly, the facts set out herein are taken from Plaintiff's Complaint (Doc. # 1), and they are assumed true for purposes of this Memorandum Opinion and Order.

In 2021, Defendant began constructing a women's restroom in the Truck Shop. (*Id.* at ¶ 4). At the time of the construction, only two other female employees worked in the Truck Shop with Plaintiff: Rita Gunning, who served as Corporate Fleet Safety Director, and Verna Reaves. (*Id.* at ¶¶ at 4, 5). Both Gunning and Reaves are white. (*Id.* at ¶ 4). Once the women's restroom was completed in 2022, Gunning and Reaves each received a key to the restroom and were able to use the restroom whenever they pleased. (*Id.*). But, Plaintiff was not given a key to the women's restroom. (*Id.*).

Because both Gunning and Reaves locked the women's restroom after each use and Plaintiff did not have a key, she was required to exit the Truck Shop to access another women's restroom in the adjacent building. (*Id.*). On more than one occasion, Plaintiff asked Gunning for a key to the women's restroom in the Truck Shop. (*Id.* at ¶ 20). Each time, Gunning declined to give the key to Plaintiff on the basis that the key also opened her office door. (*Id.*). Plaintiff contends that she was actually denied access to the women's restroom in the Truck Shop because of her race. (*Id.* at ¶¶ 4, 21). Plaintiff complained to her direct supervisor Tim Graul about her lack of access to the women's restroom. (*Id.* at ¶ 19). Graul advised her to continue going into the adjacent building to use the restroom. (*Id.*).

Plaintiff also works with a number of male employees in the Truck Shop, including Paul Baker, a white truck mechanic. (*Id.* at ¶ 5). Over the course of Plaintiff's employment, Baker made numerous racists comments to her, including telling her that he was not going to raise any "nigger grandchildren" when he found out his daughter was impregnated by an African American man. (*Id.* at ¶¶ 5, 24). In addition, on February 22, 2023, Baker parked his vehicle so close to Plaintiff's vehicle that she was unable to open the driver's side door to enter her vehicle. (*Id.* at ¶ 5).

Plaintiff complained about her interactions with Baker to Gunning, who in turn directed Plaintiff to Jennifer Kimble, the Human Resources Manager. (*Id.*). Plaintiff informed Kimble about her lack of access to the women's restroom and the racial comments that Baker made to her. (*Id.*). Although Kimble advised Plaintiff that she would investigate and address both situations, Plaintiff claims she never followed up. (*Id.*). Plaintiff also complained to Graul about Baker's racist comments, but Graul did not address the situation. (*Id.* at ¶ 19).

Plaintiff filed an EEOC Charge of Discrimination in 2023. The EEOC received Plaintiff's Charge of Discrimination on July 6, 2023. (*Id.* at ¶ 22). Plaintiff argues that, less than a week later, the women's restroom in the Truck Shop was left permanently unlocked so that she no longer had to exit the building to use the restroom. (*Id.*). In contrast, Plaintiff states that she did not experience relief from Baker's racist statements until he took an extended leave of absence from work during the late summer of 2023. (*Id.* at ¶ 6).

Plaintiff alleges that after she filed her EEOC Charge, Defendant sought to punish her for taking time off from work for a serious health condition in violation of the Family and Medical Leave Act. (*Id.* at ¶¶ 28-37, 71-82).

The EEOC issued Plaintiff a Dismissal and Notice of Rights on January 16, 2024. (Doc. # 1-1). Thereafter, Plaintiff filed her Complaint in this action on February 18, 2024. (Doc. # 1). In her Complaint, she presents six causes of action against Defendant: (1) Count I – Title VII Hostile Work Environment Race Discrimination; (2) Count II – Section 1981 Discrimination on the Basis of Race; (3) Count III – Negligent/Wanton Supervision, Training, and Retention; (4) Count IV – Outrage; (5) Count V – FMLA Interference; and (6) Count VI – Vicarious Liability. (*Id.*).

Defendant filed a Partial Motion to Dismiss under Rule 12(b)(6) on March 29, 2024 (the "Motion to Dismiss"). (Doc. # 6). The Motion to Dismiss seeks to dismiss only Count IV of Plaintiff's Complaint for failure to state a plausible claim of outrage on which relief may be granted. (*Id.*).

## II.      Legal Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Complaints that make "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## III.    Discussion

To state a claim of outrage in Alabama, "a plaintiff must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011). Under Alabama law, an outrage claim can proceed past the motion to dismiss stage only if the complaint alleges "conduct so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in civilized society." *Avendano v. Shaw*, 371 So. 3d 278, 286 (Ala. 2022) (quoting *Wilson v. Univ.*

*of Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017)). "The initial determination as to whether evidence is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law." *Carter v. Harris*, 64 F. Supp. 2d 1182, 1194 (M.D. Ala. 1999) (citing *McElroy v. TNS Mills, Inc.*, 953 F. Supp. 1383 (M.D. Ala. 1996)). In other words, to advance a claim of outrage, a plaintiff's burden is a "heavy" one. *Stancombe v. New Process Steel LP*, 652 Fed. App'x 729, 739 (11th Cir. 2016) (quoting *Surrency v. Harbison*, 949 So. 2d 1097, 1105 (Ala. 1986)).

Defendant first argues that Plaintiff has not pled a plausible outrage claim because the alleged "outrageous" conduct does not fall within one of the three categories for which the tort is recognized to cover in Alabama. (Doc. # 6 at 3). To be sure, the Supreme Court of Alabama has previously stated that the tort of outrage is an "extremely limited cause of action" that has been recognized in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment. *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted). However, the court has since clarified that these three circumstances are not exhaustive:

> That is not to say, however, that the tort of outrage is viable in only the three circumstances noted in *Potts.* Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. *See O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011). It is clear, however, that the tort of outrage is viable only when the conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010) [internal citations omitted].

*Little*, 72 So. 3d at 1172-73 (emphasis added).

Therefore, the relevant inquiry here is not whether Defendant's conduct fits squarely within the confines of one of those three previously established categories, but instead whether she has alleged conduct that is "so outrageous and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Abengowe v. MCM Servs., Inc.*, 2016 WL 1613052, at *3 (N.D. Ala. 2016). Plaintiff argues that (1) being denied access to a restroom due to her race and (2) her complaints of racist behavior going uninvestigated does just that. (Doc. # 12 at 4). The court is not convinced.

At least two courts have previously considered facts similar to those alleged here in evaluating motions to dismiss in other cases. First, in *Smiley v. Alabama Department of Transportation*, an African American employee alleged that his white supervisors placed requirements and restrictions on him that were not placed on similarly situated white employees, including requiring him to ask permission to go to the restroom or visit the water fountain. 778 F. Supp. 2d 1283, 1290 (M.D. Ala. 2011). Further, the plaintiff alleged that to receive permission to visit the restroom, he had to sign out on a board that all coworkers in his section could see that reflected his name, time out, time returned, and destination. *Id.* Despite filing numerous complaints with his employer about this alleged harassment and discrimination, the plaintiff claimed that the Alabama Department of Transportation took no action. *Id.* at 1291. He filed suit alleging, among other things, that this behavior was so outrageous and extreme in degree as to go beyond all possible bounds of decency. *Id.* at 1303-04.

The court disagreed. It found that the plaintiff's allegations were devoid of any factual support establishing that his supervisor's conduct in monitoring his bathroom and water breaks or failing to investigate his complaints fit into the "extremely limited" circumstances where the

7

Alabama Supreme Court had found conduct outrageous. *Id*. As a result, the court dismissed his claim of outrage. *Id*. at 1304.

Second, a court found dismissal of an outrage claim to be appropriate in *J.D.P. by and through Oliver v. Montgomery County Board of Education*. 2022 WL 291608, at *1 (M.D. Ala. 2022). There, a seventeen-year-old African American student alleged that one of his teachers directed numerous insults and racial slurs at him during a private lesson, which she filmed and uploaded to her social media account. *Id*. In addition, the plaintiff alleged that another teacher was present throughout the entire encounter but made no attempt to intervene and instead laughed at the insults. *Id*. Although the plaintiff reported the incident to the school board and its members, he alleged that the school board failed to provide him with any relief or counseling and neither disciplined the insulting teacher for her conduct nor removed her from her teaching position. *Id*. at 2. The plaintiff brought numerous claims against the teachers and the school board, including claims of outrage against both teachers. *Id*.

The *Oliver* court dismissed both claims of outrage. In doing so, the court noted that although the two teachers directed hostile insults and indignities to the student, insults and indignities alone were not enough to establish a claim for the tort of outrage under Alabama law. *See Oliver*, Case No. 2:20-cv-00420-WKW-KFP (Doc. # 40 at 15); *Oliver*, 2022 WL 291608, at *5. And, although the court emphasized that the teacher's racial epithets were "distasteful, disrespectful, and unprofessional," it also made clear that they did not fit the limited circumstances where the tort of outrage has been recognized because they were not in any way comparable to the three illustrative areas in which the tort has been recognized in Alabama. *Oliver*, 2022 WL 291608, at *5-6.

The decisions in *Smiley* and *Oliver* are persuasive. Similar to *Smiley*, Plaintiff's outrage claim arises from allegations that her bathroom use was limited based on her race and that her complaints to the human resources department were not investigated properly. But, these facts alone do not support a finding that this conduct is *so* egregious as to rise to the level of the other specific instances where the court has found conduct to state a claim for outrage. Although the Alabama Supreme Court has recognized that a viable claim *could* fall outside the three categories discussed above, both state courts and the Eleventh Circuit have been extremely reluctant to extend the tort to other categories of conduct. *See Moore v. Lowe*, 591 F. Supp. 3d 1087, 1118 (N.D. Ala. 2022) (citing *Stancombe*, 652 F. App'x at 739 and *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986)). In short, Plaintiff's alleged actions here are simply not in any way comparable to the illustrative areas in which the limited tort of outrage has been recognized in Alabama.

Plaintiff also alleges that Baker directed racist comments to her, as well as intentionally parked his vehicle so close to hers that she could not open her car door. But, as the court noted in *Oliver*, the Supreme Court of Alabama has made clear that the tort of outrage "does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Am. Road. Serv. Co. v. Inmon*, 394 So. 2d 361, 364-65 (Ala. 1981). Here, Plaintiff has not pled specific facts showing that any of Baker's alleged remarks or conduct falls into the Alabama Supreme Court's recognized outrage tort. *See e.g., Little*, 72 So. 3d at 1173 (holding that even though a plaintiff had alleged that a defendant "regularly engaged in hate speech against African Americans," his outrage claim was due to be dismissed because "nothing in the records indicates the nature, extent, context, or egregiousness" of the racially based comments). The court cannot say that Baker's allegedly improper parking next to Plaintiff's car qualifies as

anything more than a mere annoyance or petty oppression. And, like the teacher in *Oliver*, Baker's alleged comments to Plaintiff were certainly offensive and plainly disgusting – but that does make them outrageous under Alabama law. *Oliver*, 2022 WL 291608, at \*5. Simply put, Plaintiff has not plausibly alleged that Baker's racist statements or deliberate parking of his vehicle close to hers rose to the level of conduct that was "so outrageous and so extreme in degree as to go beyond all possible bounds of decency." *Avendano*, 371 So. 3d at 286.

Finally, the court notes again that conclusory statements alone are wholly insufficient to defeat a motion to dismiss. *Ashcroft*, 556 U.S. at 678. Accordingly, Plaintiff's conclusory claims that Defendant's conduct caused "pain and suffering, mental anguish, humiliation, degradation, emotional distress, and other emotional damages" are not sufficient to establish that she suffered emotional distress "so severe that no reasonable person could be expected to endure it." *Little*, 72 So. 3d at 1172. After eliminating any allegations in the complaint that are merely legal conclusions, and even accepting Plaintiff's facts as true, the court cannot conclude that Plaintiff has plausibly stated a claim for outrage under Alabama law. Although her Complaint clearly describes conduct that was wrong, annoying, boorish, frustrating, and rude, Plaintiff does not allege any conduct "so outrageous in character and so extreme in degree as to beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized society." *See Inmon*, 394 So. 2d at 365, 367-68 (holding that even though plaintiff's allegations that he was harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomary, and terminated without justification may have been a "somewhat disorganized and [] humiliating experience for him personally," they did not rise to the level of outrage). As a result, Plaintiff has failed to state a plausible claim of outrage.

**IV.     Conclusion**

For the reasons stated above, Defendant Koch Foods of Gadsden, LLC's Rule 12(b)(6)

Partial Motion to Dismiss (Doc. # 6) is **GRANTED** and Count IV of Plaintiff's Complaint is

**DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this June 24, 2024.


_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE